United States Courts
Southern District of Texas
FILED
January 13, 2026
Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| vs. § | CRIMINAL NO. 4:26-cr-00014 |
| § | |
| JUAN ALBERTO ROBLEDO, § | |
| § | |
| Defendant. § | |

**CRIMINAL INFORMATION**

THE UNITED STATES ATTORNEY CHARGES THAT:

**COUNT ONE**
**(Conspiracy, 18 U.S.C. § 371)**

**A.   INTRODUCTION**

At times material to this Information:

1. Defendant **JUAN ALBERTO ROBLEDO** and others known and unknown to the United States Attorney conspired together, and with intent to defraud, participated in a scheme and artifice to defraud the United States Small Business Administration (SBA) and Hancock Whitney Bank.

2. **JUAN ALBERTO ROBLEDO** was a resident of Galena Park, Texas, within the Southern District of Texas, and a small business owner. Businesses belonging to **JUAN ALBERTO ROBLEDO** had bank accounts at Hancock Whitney Bank.

3. Hancock Whitney Bank was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation.

4. **Person B** worked as a banker at a Hancock Whitney Bank branch in Houston, Texas, within the Southern District of Texas.

1

**B.     THE PAYCHECK PROTECTION PROGRAM**

5.      The SBA was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

6.      On or about March 27, 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was enacted to provide emergency financial assistance to the millions of Americans suffering adverse economic effects caused by the COVID-19 pandemic. The CARES Act established several new temporary programs and provided for expansion of others, including programs created and/or administered by the SBA.

7.      One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). The PPP provided for government-backed loans designed to incentivize small businesses to keep their workers on the payroll by providing funds for up to 8 weeks of estimated payroll costs, including benefits.

8.      To obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the applicant (through its authorized representative) was required to state, among other things: (a) its average monthly payroll expenses; and (b) its number of employees. These figures were used to calculate the amount of money the small business was eligible to receive

under the PPP. In addition, the applicant was required to provide documentation showing its payroll expenses. The applicant was also required to certify that the business was in operation on February 15, 2020, and had employees or paid independent contractors.

9. A business's PPP loan application was received and processed, in the first instance, by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

10. PPP loan proceeds were required to be used by the business on certain permissible expenses: payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

**C. THE CONSPIRACY**

11. Beginning no later than in or around May 2020, and continuing through in or around August 2020, within the Southern District of Texas and elsewhere, Defendant

**JUAN ALBERTO ROBLEDO,**

did knowingly and willfully combine, conspire, confederate, and agree with co-conspirators known and unknown to commit the following offense against the United States:

> to knowingly devise and intend to devise a scheme and artifice to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, a financial institution, by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344 (bank fraud).

**D.     MANNER AND MEANS OF THE CONSPIRACY**

12.    In furtherance of this conspiracy and to effect the objects thereof, **JUAN ALBERTO ROBLEDO** and other co-conspirators used the following manner and means, among others:

a.    Co-conspirators would submit and cause to be submitted fraudulent PPP loan applications to induce lenders to approve loans to businesses that did not qualify to receive loans, or to induce lenders to approve loans in amounts above what businesses were entitled to receive.

b.    Some fraudulent PPP loan applications submitted by co-conspirators were for businesses with existing operations, employees, and payroll. On the applications, co-conspirators would inflate the number of employees and monthly payroll of the businesses, to increase the loan amounts that the businesses would receive.

c.    Some fraudulent PPP loan applications submitted by co-conspirators were for businesses with no existing operations, employees, and payroll. On the applications, co-conspirators would falsely represent that the businesses had employees and monthly payroll.

d.    Co-conspirators would submit and cause to be submitted fraudulent documents to substantiate their false statements to lenders regarding operations, number of employees, and monthly payroll of businesses seeking PPP loans. These documents would include but are not limited to, fake IRS tax forms.

e.    Co-conspirators used PPP loan funds in part to pay for unauthorized and non-business expenses, including but not limited to payments on personal credit cards and kickback payments to **Person B** for assisting with PPP loan application approvals.

E.   **OVERT ACTS**

13.   On or about July 24, 2020, **JUAN ALBERTO ROBLEDO** submitted a PPP application to Hancock Whitney Bank through **Person B** on behalf of Robledo Industries. The PPP application falsely represented that Robledo Industries had 31 employees and an average monthly payroll of $190,455. The PPP application was supported with falsified IRS Forms 940 and 941 prepared by **Person B**.

14.   On or about July 27, 2020, Hancock Whitney Bank approved Robledo Industries for a PPP loan in the amount of $476,137. Between on or about July 27, 2020, and on or about August 10, 2020, **JUAN ALBERTO ROBLEDO** used part of these PPP funds for unauthorized and non-employment purposes, including but not limited to using a total of $209,000 to fund checks written to "Prosperous X LLC" which **JUAN ALBERTO ROBLEDO** knew to be a fictitious entity created by **Person B** for purposes of receiving PPP funds that had been awarded to ROBLEDO's businesses.

*All in violation of Title 18, United States Code, Section 371.*

NICHOLAS J. GANJEI
United States Attorney

By:   _/s/ SB_
Stephanie Bauman
Assistant United States Attorney
713-567-9000